UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO.: 8:06-cr-514-T-23MSS

RONALD EVAN MAYS

---

**ORDER**

  The defendant, Ronald Evan Mays, moves for a new trial after his conviction on each count of a three-count superseding indictment that charges, respectively, abusive sexual contact with a child under twelve contrary to 18 U.S.C. § 2244(b) and (c), assault on a child under sixteen contrary to 18 U.S.C. § 113(a)(5), and obstruction of justice contrary to 18 U.S.C. §§ 1519 and 2.[*]  The defendant argues that the obstruction of justice charge in Count Three was misjoined with Count One because the alleged obstruction was too remote temporally and disconnected both logically and factually from Count One.  Further, the defendant argues that "the prejudicial spillover of evidence on the obstruction count deprived the defendant of an impartial jury" on Count One.

  In essence, the superseding indictment charges in Count One that during a Southwest Airlines flight from Tampa, Florida, to Nashville, Tennessee, in late June, 2006, the defendant touched another passenger, a eight-year old girl, in a sexual,

---

[*] This order refers no further to the Section 113(a)(5) charge of "simple assault", which appeared as Count Two of the superseding indictment and is now dismissed.  (Doc. 74)

offensive, and felonious manner.  In Count Three the superseding indictment charges that about five months later the defendant obstructed justice by knowingly deleting material from the memory of a personal computer owned by the defendant's employer, possessed and used by the defendant, and sought by the United States in the investigation of the defendant's alleged touching of the child.

The defendant's primary complaint is that the district court admitted into evidence the fact that the material the defendant deleted from the personal computed included child pornography.  The defendant argues that this evidence was admitted contrary to the defendant's request for severance of Count Three and contrary to the defendant's objection that the nature of the deleted material, evidence of which was received in connection with only Count Three, was inherently, unfairly, and immensely prejudicial to the defendant in regard to Count One.  Although the evidence includes the fact that some of the deleted material was child pornography, neither a pornographic image nor any other description of the content of the images was permitted.

Both at the moment the evidence of child pornography was admitted and again during the formal, concluding instructions to the jury, the district court instructed the jury to consider only for a limited purpose and only as to Count Three the fact that the deleted material included child pornography.  The concluding jury instruction, which comports with the earlier contemporaneous instruction, states:

> Finally, a reminder: During the trial you heard certain evidence, as I instructed you at the time, that you should consider for a limited purpose only, that is, you heard evidence that you should consider only as to one charge and not as to the other two.  The evidence concerning the contents of the laptop computer, received into evidence as Exhibit 6 and assigned to the defendant by his employer, should be considered by you, if you decide to accept the testimony, only with respect to Count Three, the

- 2 -

>charge of impeding an investigation, and not in any manner with respect to Count One . . . which relate[s] to, using a shorthand term, the man's alleged "touching" of the girl. More specifically, you may consider the contents of the laptop computer only in determining whether the defendant had a motive to, intended to, and did impede an investigation by the Department of Justice, as charged in Count Three. You may consider this evidence for no other purpose.

Notwithstanding the limiting instructions to the jury, the defendant insists that the "spillover" effect of the evidence of the defendant's possession of child pornography unfairly prejudiced the jury's deliberation on Count One and deprived him of a fair trial. Accordingly, the defendant requests a new trial.

The United States responds that no misjoinder is accomplished by joining the charge of obstruction of justice in Count Three to the sexual contact and assault charges in Count One, the investigation of which was allegedly obstructed by the acts alleged in Count Three. For reasons and under authority stated by the United States, the defendant's claim of misjoinder is rejected. The connection between the defendant's alleged felonious touching and his alleged obstruction of the investigation of his alleged touching permits proper joinder of the claims. (Of course, under certain circumstances, evidence on one count may unfairly prejudice the jury's consideration of another count even if the counts are not misjoined.)

Mays's motion for a new trial, which asserts a prejudicial "spillover" of evidence from Count Three to Count One, requires a careful evaluation of the testimony in juxtaposition to the required elements of proof. The governing question is whether, despite the instructions to the jury to consider the evidence of the presence of child pornography on a personal computer in Mays's possession only for Count Three and not for Count One, the effect emanating from Count Three (the "spillover" effect about

which Mays complains) nonetheless affected prejudicially the jurors' deliberation on Count One.

Examination of the elements of proof adopted by the jury instructions in this case reveals no serious question in the evidence on the third and fourth elements of proof (the child's age and the occurrence of the episode during a civil flight on an aircraft). Certainly nothing from the evidence pertinent to Count Three meaningfully affected (prejudicially or otherwise) the jurors' determination of these two obvious elements of Count One.

The second element of proof of the offense alleged in Count One requires "sexual contact . . . without the victim's permission." The record contains little, if any, evidence pertinent to the question of permission (and the record includes nothing concerning the pertinence of permission in a case involving an eight-year old child). Certainly the record contains no evidence of either a request for or a denial of permission for the touching. The record permits (if not compels) a finder of fact to conclude that no permission, explicit or otherwise, occurred. Certainly nothing from the evidence on Count Three meaningfully affected the jurors' determination of the "permission" element of Count One.

Mays's motion for a new trial hinges on the first element of proof, expressed as follows in the jury instructions:

> That the defendant, on or about the date alleged in the indictment, knowingly touched, either directly or through the clothing, the breast of inner thigh of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

Although the prosecutor failed to narrate carefully or otherwise preserve for the written record the details of the courtroom demonstration by the child and her grandmother, during which demonstration the two re-enacted the alleged incidents, the jury viewed during the demonstration a portrayal of the man's reaching in an unexceptional manner across the child toward the aircraft's window in a manner that permitted the man's forearm to lightly but distinctly contact both the child's blouse and the chest of the child, who is a typical, physically immature eight-year old (at the time of the alleged incident). Also during the demonstration, augmented slightly by the testimony (or, perhaps, vice versa), the jury viewed a portrayal of a man's elbow spilling over the armrest of the middle seat, touching the inner thigh of the child, and (either because of weight or because of conscious pressure – the record is silent) pressing the child's thigh against the seat (or armrest or both), all of which occurred while the man and the child watched a movie on the child's DVD player (at the child's invitation). The child confirms that the man never touched her with his hand. The evidence includes no other touching (i.e., no kiss or hug or pat or grasp or anything else) except with the elbow (touching the inner thigh) and the forearm (touching the chest).

Despite some discrepancies in the identification testimony, the evidence suffices for the jury to conclude beyond a reasonable doubt that the man seated next to the child was Mays and that Mays two or three times touched her with his forearm and elbow in the manner presented during the demonstration by the child and her grandmother. The record includes no evidence that the child was not touched and includes no evidence that the child was touched differently. Reason confirms that nothing from the evidence

on Count Three meaningfully affected the jurors' determination that the child was touched by the man next to her at the times and in the places that she described.

The statute governing Count One requires a "sexual contact" – not just any contact – that is, a sexual touching and not just any touching. To constitute a "sexual contact," the statute requires a touching, directly or through the clothing, of the breast or inner thigh (or some other places not pertinent to this case). The evidence in this case permits a reasonable juror to conclude beyond a reasonable doubt that the man seated next to her touched the child through her clothing on the breast and the inner thigh with his forearm and elbow, respectively. Nothing from the evidence on Count Three meaningfully affected the jurors' determination that the man seated next to the child touched the child on the breast and inner thigh with his forearm and elbow.

However, the statute defining "sexual contact" also requires that the contact in question include an "intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." In this case, the crucial and governing issue is whether Mays's touching was merely incidental, inadvertent, or otherwise innocent or whether the touching was abusive or otherwise sexual in one or more of the statutorily proscribed manners (perhaps with the intent "to arouse . . . the sexual desire" of the man touching the child).

The mere fact of an inadvertent touching by the forearm on the chest of the child and the incidental touching by the elbow on the inner thigh of the child in an adjoining seat (Mays is a stocky and somewhat obese man whose bulk sorely challenges the dimensions of an airline passenger's seat) are not events that are inherently abusive, degrading, arousing, or otherwise sexual in intent. The attendant circumstances must

- 6 -

inform a juror's conclusion about whether an action that is not inherently and necessarily sexual and that implicates only principles of etiquette and civility is transmogrified by lascivious intent into an explicitly sexual action that implicates the criminal law.

The testimony presents only a few attendant circumstances arguably informing the precise nature of these events, which occurred in the morning, in broad daylight, and in the presence of both passengers (at least one pointedly alert to the matter) and flight attendants (in turn, alerted to the matter) on a brief flight from Tampa to Nashville (continuing to Detroit; the man disembarked in Nashville and the child remained into Detroit). First, the child testified that "[Mays] sat [a Southwest Airlines napkin] on his private area. And there was a map on the napkin and it showed the states and it had the names on it. And he wanted me to point out a state. I said I did not know where it is." Second, the child testified that "the flight attendant came around with fruit bars, and [Mays] took the fruit bar and sat it on his private area again and asked me if I wanted it and I said no. And he laid it on his tray." Third, the child testified as follows in response to questions from the prosecutor:

Q: When the man was sitting next to you, did he ever touch himself?

A: Yes.

Q: What did you observe? What did you see?

A: He was itching his private area a lot during the flight to Nashville.

Q: Where was he looking when he was doing that?

A: He was watching the movie while he was scratching it.

The evidence shows that no touching of the child occurred as a result of the incident with the napkin, the incident with the fruit bar, or the incident of the "scratching" (or "itching") of the "private area." The evidence includes no statements by the man to the child that might have characterized further or more reliably his intent in one or more of these instances. The evidence, for example, fails to define what area of an obese male seated in an airline seat with his seat-belt attached and with the tray-table down while watching a DVD constitutes his "private area," as the term is understood and reported by an eight-year old. The evidence fails to clarify the precise area of "itching" and "scratching," the frequency or duration of the "itching" and "scratching," whether the "itching" and "scratching" was with the palm of the hand or the fingers or both, or whether any other manipulation or the like of this "private area" accompanied the "itching" and "scratching" (the child's notion of "a lot" of "itching" and "scratching" is left to the speculation of the jury). The evidence provides sparse details beyond the generalized occurrence of these events. In sum, the evidence of the incident aboard the aircraft provides little information that enables a juror to ascertain confidently whether the touching was a "sexual contact" or a merely "incidental contact" (or even an imperious, thoughtless, or rude – but not illegal – intrusion of a big person into the space of a small person).

Given this marked ambiguity in the evidence with respect to the intent with which the touching of the child occurred and given the statute's demand for a finding beyond a reasonable doubt that the touching was a "sexual contact" intended to "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," Mays requests a new trial. Mays claims that the introduction in support of Count Three of

evidence of his possession of child pornography among a large cache of prurient and other material on the hard drive of a personal computer in his possession prejudicially infected the jurors and precluded their fair and impartial weighing of the evidence on Count One, particularly the question of the intent that accompanied the touching of the child in the adjoining seat.

The relevance for Count One of the evidence offered on Count Three generates continuing disagreement between the United States and the defense. The United States and the defense have argued about the applicability and results under Rules 404(b) and 414 (the United States vacillates on the Rule 414 issue, arguing one way and then the other). For the purpose of the trial, the evidence was received but putatively limited to Count Three. The evidence includes the existence of the child pornography but not a description of the images or the images themselves, and the jurors were instructed to confine consideration of the existence of the pornography to their deliberation on Count Three.

Mays insists that the limiting instruction was ineffective, and the prejudicial effect on Count One of the evidence of child pornography was dramatic and determinative of the outcome. Properly applied, Rule 403 operates to exclude the evidence of the child pornography, which evidence was only tangential to the jury's consideration of Count Three but was pernicious and adulterating to the jury's consideration of the issue of Mays's intent in any touching of the child, the central issue for Count One and an issue, as discussed, about which the evidence leaves a troublesome ambiguity.

Undoubtedly, Rule 403 requires a balance of probative value against unfairly prejudicial effect even if Rule 404(b) and Rule 414 otherwise permit the evidence.

Johnson v. Elk Lake School Dist., 283 F.3d 138 (3rd Cir. 2002); United States v. Guardia, 135 F.3d 1326 (10th Cir. 1998); United States v. Larsen, 112 F.3d 600 (2nd Cir. 1997) (citing the "Report of the Judicial Conference on the Admission of Character Evidence in Certain Sexual Misconduct Cases," 159 F.R.D. 51 (1995)); United States v. Sumner, 119 F.3d 658 (8th Cir. 1997); Cleveland v. KFC Nat'l Management Co., 948 F. Supp 62 (N.D. Ga. 1996).

The Rule 403 balance emerges clearly from a close reading of the transcript of the trial. The evidence directed toward Count One (and the now-dismissed Count Two) provides little, if any, basis for a reasonable juror to conclude beyond a reasonable doubt that a "sexual contact," that is, a contact intended to abuse, arouse, gratify, or the like, occurred between Mays and the child. However, the effect of the evidence that Mays's personal computer, lent to him by his employer, contained a quantity of child pornography (provenance unproven) migrates, apparently unavoidably and despite the limiting instructions to the jury, from the Count Three question of his motive or intent to obstruct an investigation by deleting data from the computer over to the Count One question of his intent, if any, in touching the child. Stated differently, the evidence offers little, if anything, to sustain the verdict on Count One assuming the jury, compliant with the court's instructions, disregarded in deliberating Count One the evidence of Mays's deletion of child pornography, which evidence was introduced in connection with, and limited by the court's instructions directed to, Count Three.

The defense unsuccessfully (and belatedly) requested a severance of Count Three and requested exclusion of the testimony identifying the deleted material as child pornography. Either course would have preserved the integrity of the jury's

consideration of Count One.  Instead, the evidence was received but accompanied by a limiting instruction, which the jury manifestly failed to implement during deliberation.

Viewed in retrospect, the belated severance request was not well-founded.  On the other hand, the request to exclude the evidence of child pornography was well-founded.  Admitting evidence of Mays's deletion of data on the personal computer but admitting the evidence without identifying the content of the deleted material as child pornography would have served any legitimate purpose of the prosecution on Count Three, while preserving the integrity of the jury's deliberation on Count One.  In short, admitting the fact of Mays's deletion of child pornography profoundly adulterated the verdict on Count One and served only a slight, legitimate purpose on Count Three, a circumstance Rule 403 designs to avoid.

## **CONCLUSION**

Because the fact that Mays deleted child pornography, rather than some other personal material, from the company's personal computer only marginally advanced Count Three but prejudicially and unnecessarily infected the jury's deliberation on Count One contrary to the court's instructions to the jury, Mays's motion for a new trial on Count One is **GRANTED** but in other respects is **DENIED**.

ORDERED in Tampa, Florida, on June 26, 2007.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE